JUDGE ABRAMS

14 CV 413

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

LYDIAANN JIMENEZ,

                                Plaintiff,

    -v-

THE CITY OF NEW YORK, New York City Police
Department ("NYPD") Deputy Chief JAMES
MCNAMARA, Officer ("P.O.") LISA WARING
(Shield No. 2987), P.O. JOHN DOEs 1 through 10
(the name John Doe being fictitious, as the true names
and shield numbers are not presently known), in their
individual capacities,

                                Defendants.

-----------------------------------------------------------------x

**COMPLAINT AND DEMAND FOR A JURY TRIAL**

13-CV-

*RECEIVED JAN 23 2014 U.S.D.C. S.D.N.Y. CASHIERS*

       Plaintiff LYDIAANN JIMENEZ, through attorneys DAVID B. RANKIN of Rankin & Taylor, PLLC and ANDREA RITCHIE, Esq., as and for the complainant, does hereby state and allege:

### PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the First, Fourth, and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983.

2. Plaintiff's rights were violated when officers of the NEW YORK CITY POLICE DEPARTMENT ("NYPD") unreasonably seized the plaintiff's person by interfering with her freedom of movement and then arresting her without individualized determination of probable cause in the vicinity of a demonstration, and by unconstitutionally and without any

legal basis using unlawful and unreasonable force against plaintiff. By reason of defendants' actions, plaintiff's constitutional rights were violated.

3. Plaintiff seeks an award of compensatory and punitive damages and attorneys' fees and costs.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331, 1343 (a)(3-4). This action is brought pursuant to 42 U.S.C. §§1983 and 1988 and the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

5. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

6. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

## PARTIES

7. Plaintiff is currently and was at all times relevant to this action a resident of the County of New York in the State of New York.

8. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

9. New York City Police Department ("NYPD") Deputy Chief JAMES MCNAMARA, Officer ("P.O.") LISA WARING (Shield No. 2987), and P.O. JOHN DOEs 1 through 10 (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

10. The individual defendants are being sued herein in their individual capacities under federal law.

11. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD, and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

12. The true names and shield numbers of defendants P.O. JOHN DOEs 1 through 10 are not currently known to the plaintiff.[1] However, they are employees or agents of the NYPD.

## STATEMENT OF FACTS

13. Plaintiff JIMENEZ was maliciously injured by the individual defendants as they conducted a false arrest and used excessive force against plaintiff at the corner of 46th Street and Broadway in the County and State of New York.

14. On the evening of May 30, 2012, plaintiff JIMENEZ was peacefully participating in a lawful public protest at or about the corner of 46th Street and Broadway.

15. At some point after the crowd had been proceeding peacefully uptown Broadway for over 20 blocks, defendant MCNAMARA asked the crowd to get on the sidewalk.

16. At no point did defendant MCNAMARA or any NYPD officer give a constitutionally sufficient warning to protesters that they would be subject to arrest if they failed to get on the sidewalk.

---

[1] By identifying said defendants as "John Doe" plaintiff is making no representations as to the gender of said defendants.

17. Despite the constitutional infirmities of the order, the crowd complied with the request they get on the sidewalk and began to disperse, and plaintiff JIMENEZ moved to leave the area.

18. As plaintiff JIMENEZ was attempting to leave the area thought the crowd when defendant MCNAMARA pushed plaintiff's shoulder from behind. As plaintiff JIMENEZ turned to find out who was pushing plaintiff's elbow brushed against the hand of defendant MCNAMARA. Plaintiff JIMENEZ then continued to proceed to leave the area.

19. Defendant MCNAMARA, without any lawful justification whatsoever, responded by grabbing plaintiff JIMENEZ and pulling plaintiff back into the street, and was subsequently joined by defendants JOHN DOES 1-3. All four officers then proceeded to pull plaintiff JIMENEZ, who stands at 5'4" and weighed less than 110 pounds at the time, to the ground.

20. Defendants Deputy Chief JAMES MCNAMARA and JOHN DOES 1-3 then proceeded to press plaintiff JIMENEZ'S body into the ground and held plaintiff there for an extended and unreasonable period of time.

21. Individual defendants P.O. JOHN DOEs 4 through 10 witnessed these clear violations of plaintiff's constitutional rights and yet did not fulfill their duty to intervene to prevent or stop these violations from taking place.

22. Plaintiff JIMENEZ was subsequently picked up off the ground and held in a van in the vicinity of the arrest for an extended and unreasonable period of time until transported by defendant P.O. WARING to the 18th Precinct at approximately 3:00 A.M.

23. Plaintiff JIMENEZ was not offered any food or water during the time they were held in the van or at the precinct.

24. Plaintiff JIMENEZ spent approximately 24 hours in NYPD custody as a result of defendants' unlawful and unreasonable seizure and arrest without probable cause.

25. Plaintiff JIMENEZ was required to appear in court May 31, 2012 to answer charges brought by defendants. The case was adjourned to August 8, 2013, and plaintiff JIMENEZ was released without bail.

26. At the August 8, 2012 appearance, the case was calendared for trial on October 2, 2012. The People subsequently requested four (4) adjournments for trial against plaintiff JIMENEZ between October 2, 2012 and March 12, 2013. Plaintiff JIMENEZ successfully moved on March 24, 2013 for dismissal of the case on speedy trial grounds.

27. As a result of the individual defendants' use of excessive force, plaintiff JIMENEZ experienced bodily injuries.

28. Additionally, plaintiff JIMENEZ experienced and continues to experience mental and emotional harms as a direct result of defendants' actions.

## FIRST CLAIM
## FALSE ARREST
## FOURTH AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983
### (All defendants)

29. Plaintiff repeats, reiterates and realleges each and every allegation contained in all preceding paragraphs with the same force and effect as if fully set forth herein, and incorporates them by reference.

30. As a result of the heretofore described conduct by defendants, plaintiff was subjected to an illegal, improper and false arrest by defendants, and taken into custody and caused to be falsely imprisoned, detained, and confined, without any probable cause, privilege or consent, in violation of the Fourth and Fourteenth Amendments of the Constitution of the United States.

31. As a result of the foregoing, plaintiff suffered injury and damages, including, *inter alia*, physical and mental pain and suffering, mental anguish, and deprivation of liberty.

## SECOND CLAIM
## RETALIATORY ARREST
## FIRST AND FOURTEENTH AMENDMENTS THROUGH 42 U.S.C. § 1983
### (Against Deputy Chief J. McNamara)

32. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

33. By the actions described above, defendant arrested plaintiff in direct retaliation for both the content and viewpoint of plaintiff's speech, and did so without having probable cause to arrest plaintiff for any offense. The acts and conduct of the defendant were the direct and proximate cause of injury and damage to plaintiff and violated plaintiffs' rights under the First and Fourteenth Amendments, as secured through 42 U.S.C. § 1983.

34. As a result of the foregoing, plaintiff was deprived of liberty, was forced to cease participating in protected speech, suffered psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

## THIRD CLAIM
## MALICIOUS PROSECUTION AND FABRICATION OF EVIDENCE THROUGH 42 U.S.C. § 1983 IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
### (Against Defendants Waring and MacNamara)

35. Plaintiff repeats, reiterates and realleges each and every allegation contained in preceding paragraphs with the same force and effect as if fully set forth herein, and incorporates them by reference.

36. Defendants misrepresented and falsified evidence before the District Attorney.

37. Defendants did not make a complete and full statement of facts to the District Attorney, and withheld exculpatory evidence from the District Attorney.

38. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

39. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

40. Defendants acted with malice in initiating criminal proceedings against plaintiff.

41. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

42. Defendants lacked probable cause to continue criminal proceedings against plaintiff.

43. Defendants acted with malice in continuing criminal proceedings against plaintiff.

44. Defendants misrepresented and falsified evidence throughout the criminal proceeding.

45. Notwithstanding the perjurious and fraudulent conduct of the defendants, the criminal proceedings against plaintiff were terminated in plaintiffs' favor when all charges were dismissed.

46. As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered injury and damages, including, *inter alia*, physical and mental pain and suffering, mental anguish, and deprivation of liberty.

## FOURTH CLAIM
### ABUSE OF PROCESS THROUGH 42 U.S.C. § 1983 IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS
(Defendants MacNamara and Waring)

47. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein, and incorporating them by reference.

48. Defendants issued legal process to place plaintiff under arrest.

49. Defendants arrested plaintiff in order to achieve a collateral objective beyond the legitimate ends of the legal process, <u>to whit</u>, on information and belief, to remove demonstrators from the Times Square area.

50. Defendants acted with intent to do harm to plaintiff without excuse or justification.

51. As a direct and proximate result of the misconduct and abuse of authority described above, plaintiff has suffered injury and damages, including, *inter alia*, physical and mental pain and suffering, and mental anguish.

## FIFTH CLAIM
## <u>EXCESSIVE FORCE THROUGH 42 U.S.C. § 1983 IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS</u>
### (Against all defendants)

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein, and incorporates them by reference.

53. The level of force employed by defendants against plaintiff was objectively unreasonable and violated plaintiff's constitutional rights.

54. As a result of the aforementioned conduct of the defendants, plaintiff was subjected to excessive force and sustained physical and emotional injuries.

## SIXTH CLAIM
## <u>SUPERVISORY LIABILITY THROUGH 42 U.S.C. § 1983</u>
### (Against Deputy Chief J. McNamara)

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in all preceding paragraphs with the same force and effect as if fully set forth herein.

56. By their conduct in failing to remedy the wrongs committed by employees of the THE CITY OF NEW YORK under their supervision; in failing to properly train, supervise, or discipline

8

employees of the THE CITY OF NEW YORK under Deputy Chief J. McNamara's supervision; and in directing employees under his supervision, defendants, acting under the color of state law and in their individual and official capacities and within the scope of their employment, caused damage and injury in violation of plaintiff's rights guaranteed under 42 U.S.C. § 1983, and the United States Constitution, including its First, Fourth, and Fourteenth Amendments.

57. As a result of the foregoing, plaintiff was deprived of liberty, suffered specific and serious bodily injury, pain and suffering, emotional distress and psychological injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SEVENTH CLAIM
### *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983

58. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

59. All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

60. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

61. The acts complained of were carried out by defendant Deputy Chief J. MCNAMARA in his capacity as a police officer and official pursuant to customs, policies, usages, practices,

procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

62. The aforementioned customs, practices, procedures and rules of the CITY and the NYPD include, but are not limited to, the unconstitutional policy, practice, or custom of conducting mass arrests at public events (whether they be spontaneous, permitted, or otherwise) without making individualized determinations of probable cause or reasonable suspicion.

63. This policy, practice or custom of conducting mass arrests at public events without making individualized determinations of probable cause or reasonable suspicion manifests itself in many forms, including but not limited to the following:

   a. Failing to supervise, train, instruct and discipline police officers concerning how to make individualized determinations of probable cause and/or reasonable suspicion at public events (whether they be spontaneous, permitted, or otherwise) or while making mass arrests at demonstrations or otherwise; and

   b. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers, and/or discouraging officers from failure to intervene to prevent same.

64. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

   a. Osterhoudt v. The City of New York, 10 Civ. 3173(RJD), 2012WL4481927 (E.D.N.Y. September 27, 2012) (Judge Dearie denied the City of New York's motion to dismiss what is substantially parts (a) and (b) of this Monell claim by stating, "[s]hould such a de facto policy or practice of mass arrests exist, it will not likely be shown by direct evidence… Sensitive to this formidable hurdle, I too conclude that plaintiff has 'nudged [his] claims across the line from conceivable to plausible.");

   b. Long v. City of New York, 09 Civ. 9216 (AKH) (S.D.N.Y.); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer who purposefully swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force; the plaintiff was engaged in expressive conduct, to wit, riding in a Critical Mass bicycle ride, when he was assaulted by the officer);

 c. <u>Taylor-Mickens v. City of New York</u>, 09 Civ. 7923 (RWS) (S.D.N.Y.) (police officers at the 24th Precinct issue four summonses to a woman in retaliation for her lodging a complaint with the Civilian Complaint Review Board at the precinct);

 d. <u>Lin v. City of New York</u>, 09 Civ. 1936 (PGG) (S.D.N.Y.) (officers arrest <u>en masse</u> participants in a Critical Mass group bicycle ride, without individualized suspicion, including person lawfully photographing an arrest of a bicyclist in Times Square and a bystander after refusing an unlawful order to produce identification);[2]

 e. <u>Colon v. City of New York</u>, 09 Civ. 00008 (E.D.N.Y.) In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on <u>Iqbal</u>/<u>Twombly</u> grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

 f. <u>Callaghan v. City of New York</u>, 07 Civ. 9611 (PKC) (S.D.N.Y.) (officers accused of falsifying evidence and mass retaliatory arrests of bicyclists, not based upon individualized suspicion, engaged in expressive conduct, <u>to wit</u>, riding in Critical Mass bicycle rides after the 2004 Republican National Convention);

 g. <u>Dunlop v. City of New York</u>, 06 Civ. 0433 (RJS), 2008 U.S. Dist. LEXIS 38250 (S.D.N.Y.) (bystander arrested outside the 2004 Republican National Convention while observing arrests occurring in public; alleges that police destroyed exculpatory evidence by deleting portions of a video which contradicted sworn criminal complaint);

 h. <u>MacNamara v. City of New York</u>, 04 Civ. 9216 (RJS) (JCF) (S.D.N.Y.) (evidence of perjured sworn statements systematically provided by officers to attempt to cover-up or justify unlawful mass arrests of approximately 1800 people, not based upon individualized suspicion, has been and continues to be developed in the consolidated litigation arising out of the 2004 Republican National Convention);

---

[2] For a description of this case and settlement, *see*, Anahad O'Connor, *City Pays $98,000 to Critical Mass Cyclists*, N.Y. Times, March 30, 2010, *available at* http://cityroom.blogs.nytimes.com/2010/03/30/city-pays-98000-to-critical-mass-cyclists/.

11

    i. <u>Allen v. City of New York</u>, 03 Civ. 2829 (KMW) (GWG) (S.D.N.Y.) (police surround and arrest groups of persons lawfully protesting against the policies of the World Economic Forum, without first making individualized determinations of suspicion);

65. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to discouraging police officers from reporting the corrupt or unlawful acts of other police officers, and/or discouraging officers from intervening to prevent same** are further evidenced, <u>inter alia</u>, by the following:

    a. The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[3]

    b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

    c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in <u>Colon v. City of New York</u>, 09 Civ. 00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying

---

[3] Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

under oath and false swearing, Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[4]

66. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints, or otherwise falsifying or fabricating evidence**, are further evidenced, inter alia, by the following:

   a. The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system. It concluded:

   > Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their supervisors. Corrupt and honest officers told us that their supervisors knew or should have known about falsified versions of searches and arrests and never questioned them.[5]

   > [...]

   > What breeds this tolerance is a deep-rooted perception among many officers of all ranks within the Department that nothing is really wrong with compromising facts to fight crime in the real world. Simply put, despite the devastating consequences of police falsifications, there is a persistent belief among many officers that it is necessary and justifies, even if unlawful. As one dedicated officer put it, police officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get a suspected criminal off the streets. This attitude is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty."[6]

   b. In late 2009, a former NYPD officer in the Bronx, Pedro Corniel, was charged with perjury for claiming to have caught a burglar "red-handed," when, in fact, two other

---

[4] Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, available at http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[5] Mollen Commission Report, p. 36.

[6] Mollen Commission Report, pp. 40-41.

13

officers had made the arrest and handed the arrest off to Mr. Corniel. The suspect was released.[7] Moreover,

> Prosecutors and NYPD Internal Affairs probers have identified as many as two dozen cases in the past year in which cops allegedly made false statements involving routine arrests when the truth would have served them just as well.
>
> That's a significant increase over previous years, sources said.
> "In the past, we'd find this happening once or twice a year, and now there are a bunch of them," said one law-enforcement official.
>
> What has the authorities particularly troubled is that officers historically have lied to cover up more serious corruption, such as the cadre of Brooklyn narcotics cops caught last year stealing drugs from dealers and masking their thievery by filing false reports about what they had seized.
>
> But internal probers are now finding that officers appear willing to take insidious shortcuts and lie on arrest reports when they are processing even routine collars, such as grand larceny, burglaries and robberies, sources told The Post.
>
> Their reasons could range from trying to cut down on paperwork to being lazy when filling out arrest and incident reports.[8]

## JURY DEMAND

67. Plaintiff demands a trial by jury in this action on each and every one of the claims for damages asserted herein.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

    a.    Compensation for violation of constitutional rights, pain, suffering, mental anguish, and humiliation; and

    b.    An award of punitive damages against the individual defendants; and

---

[7] Murray Weiss, *NYPD in a Liar Storm*, New York Post, October 26, 2009, *available at* http://www.nypost.com/p/news/local/nypd_in_liar_storm_qazMBEm3UNJVogv4NdeqcI.

[8] *Id.*

c. Compensation for attorneys' fees and the costs and disbursements of this action;

d. For the destruction or judicial sealing of all arrest related records; and

e. For such other further and different relief as to the Court may seem just and proper.

Dated: New York, New York
January 21, 2014

Respectfully submitted,

By: /s/ David B. Rankin
David B. Rankin
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 1007
t: 212-226-4507

Andrea Ritchie
Attorney at Law
*Attorney for the Plaintiff*
990 President Street, No. 1B
Brooklyn, New York 11225
t: 646-831-1243

15